# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 51911-9-II |
| V.S. | (Consolidated with No. 52375-2-II) |
| Appellant | UNPUBLISHED OPINION |

LEE, A.C.J. — V.S. appeals from the superior court's involuntary medication orders. V.S. argues that (1) the State failed to meet its burden to prove a compelling state interest, (2) the State failed to present sufficient evidence to show involuntary medication was necessary and effective, (3) the superior court applied the wrong legal standard for involuntary medication, and (4) the superior court's orders are invalid because they failed to direct the maximum dosage to be administered by the State. We affirm.

## FACTS

In April 2017, V.S. was detained on an emergency basis because she was gravely disabled. The superior court then held a hearing and entered a 14-day involuntary treatment order. V.S. remained in involuntary commitment at Western State Hospital.

In September 2017, Dr. Shawn Noor filed a petition for treatment with involuntary antipsychotic medication. However, the superior court denied the petition for involuntary medication because the State had failed to meet its burden.

In December 2017, Dr. Jaime Stevens filed another petition for treatment with involuntary antipsychotic medication. At a hearing before the superior court commissioner, Dr. Stevens testified that V.S. was currently diagnosed with unspecified psychotic disorder, rule out minor cognitive disorder, delusional disorder by history, borderline traits, and major depressive disorder by history. Dr. Stevens also testified that V.S. refused to take antipsychotic medication because she did not believe that she had any mental illness.

Dr. Stevens explained that not administering the medication would likely result in harm because V.S.'s refusal to take her medication and to effectively treat her diabetes was the direct result of her psychosis and delusions. Dr. Stevens stated that failure to administer the antipsychotic medication would substantially prolong V.S.'s commitment at Western State Hospital.

Dr. Stevens also explained that the likely benefits of antipsychotic medication would be a reduction of delusions and an increase in rational thinking that would likely increase her rational participation in medical decisions and make her better able to better care for herself. Dr. Stevens testified regarding the relationship between V.S.'s delusions, her current medical condition, and the proposed medication:

> [Assistant Attorney General (AAG):] . . . Okay. Do you think if these medications are not administered that there's a likely (inaudible) harm to herself?
>
> [Dr. Stevens:] Absolutely.
>
> [AAG:] And how do you arrive at that conclusion?
>
> [V.S., interrupting:] Because I'm so f***ing smart.
>
> [Dr. Stevens:] So [V.S.]'s refusal to take—
>
> [V.S., interrupting:] SMS.

[Dr. Stevens:] [V.S.]'s refusal to take her medication for—and be evaluated for her somatic conditions, her diabetes, her hyponatremia, et cetera, is a direct result of her psychosis and a delusion that she knows better than the medical community and has alternate ranges of acceptable in terms of her blood work.

If that delusion—if those delusions were improved by the medications, she would be able to reason and make safer decisions, which would put her at much less risk for coma, kidney dialysis, loss of vision, further loss of vision, further neuropathy, loss of limb.

[V.S., interrupting:] There is [sic] no medical problems (inaudible) and has never been.

[AAG:] . . . Do you think if these medications were not administered, she would suffer a deterioration of routine function?

[Dr. Stevens:] Yes.

[AAG:] And how do you arrive at that conclusion?

[Dr. Stevens:] Those are the natural course of these diagnoses which she has.

[V.S., interrupting]: B***sh**.

[Dr. Stevens:] Untreated diabetes can lead to an elevated hemoglobin A1C, caused glycosylated proteins in her blood, which she already has. Those are—those can directly result in, like I said, loss of vision, loss of limb, worsening neuropathy, kidney (inaudible).

[AAG:] . . . Okay. Do you think a failure to administer these medications would substantially prolong her stay here at Western State?

[Dr. Stevens:] Yes, because all of those medical complications would have to be dealt with at an inpatient level.

[AAG:] Okay. What is your prognosis if these medications are administered?

[V.S., interrupting:] I'll just die.

[Dr. Stevens:] Fair.

3

No. 51911-9-II (Consolidated with No. 52375-2-II)

[AAG:] . . . Okay. But what do you mean by "fair"?

[Dr. Stevens:] I think it's very likely that her willingness to care for herself would be improved if she was able to think more rationally. I think that she might continue to have some delusions, although oftentimes the edge is taken off of those and they are less intense and there is an ability to sort of engage in therapeutic milieu as well as engage in conversation with the internist and medical providers to weigh risks and benefits of medical care.

[AAG:] And what's your prognosis if these are not administered?

[Dr. Stevens:] Expedited death.

2 Verbatim Report of Proceedings (VRP) at 116-18. And Dr. Stevens testified that the medications were medically necessary and appropriate. 2 VRP 119. Dr. Stevens explained that,

The only other evidence we have for treating [V.S.'s] diagnosis is psychotherapy, and we are offering her that and she is refusing that. I do believe, though, that once her—once she is able to reason and able to participate in her care when her thought process is organized by the medications, she will be able to engage in the psychotherapy process.

2 VRP at 119.

The superior court commissioner granted the petition in part. In its oral ruling, the commissioner explained that the issue comes down to the V.S.'s diabetes, which was described as being severe, and testimony that V.S. has refused "24 out of 28 doses of insulin." 2 VRP at 151. The commissioner stated:

I am not convinced by the testimony of [V.S.] who basically says, "Hell if I know," to whether there's a diabetes diagnosis or not or whether it's appropriate, but the refusal of both the finger sticks and the insulin is likely to be life threatening, and that is reason, I believe, that—

[V.S.]: Did you see all those finger sticks?

[Commissioner]: I believe that it is reason sufficient to enter the order in this case with no less restrictives being available at present.

4

No. 51911-9-II (Consolidated with No. 52375-2-II)

2 VRP at 151-52.

The superior court commissioner's December 28, 2017, written Findings of Fact, Conclusions of Law, and Order Authorizing Involuntary Treatment With Antipsychotic Medications found four compelling state interests justifying the use of antipsychotic medication:

> 4. **Reasons for the Use of Antipsychotic Medication.** The Petitioner has a compelling interest in administering antipsychotic medication to the Respondent for the following reasons:
>
> Respondent has recently threatened, attempted or caused serious harm to self or others and treatment with antipsychotic medication will reduce the likelihood that Respondent will commit serious harm to self or others; (ISSUES WITH PHYSICAL HEALTH INCLUDING DIABETES WHICH IS ALREADY GETTING SEVERE). Respondent believes that she has a special condition because she is from the British Isles that will cause her to break out in boils from having certain diabetes treatment(s). Is refusing her glucose shots (refused 24 of 28 doses of insulin). Refuses finger sticks for blood glucose. Mostly caused by delusion(s).
>
> Respondent has suffered or will suffer a severe deterioration in routine functioning that endangers Respondent's health or safety if he/she does not receive such treatment, as evidenced by Respondent's past behavior and mental condition while he/she was receiving such treatment.
>
> Respondent will likely be detained for a substantially longer period of time, at increased public expense, without such treatment.
>
> Other: Hope is that the medications will help alleviate her delusions and allow rational choices including for her physical health. She could treat her issues with psychotherapy but currently refuses to take part in it due to mental illness. Had been treated with an anti-psychotic (Olanzapine) in the community—St. Clare and Harrison Hospital. . .(when this is said the respondent says "bull***t").
>
> 5. **Less Effective Alternatives.** Antipsychotic medication is a necessary and effective course of treatment for the Respondent, as evidence by Respondent's prognosis with and without this treatment and the lack of effective alternative courses of treatment. The alternatives are less effective than medication for the following reasons:

5

> They are more likely to prolong the length of commitment for involuntary treatment;
>
> . . . .
>
> Other: If medication is administered then she is likely to make more rational decisions, particularly about her medical situations. If not administered she is likely to have serious health concerns, including death. Physical health has already deteriorated to point of starting to affect her.

Clerk's Papers (CP) at 73-74. The commissioner made the findings by clear, cogent, and convincing evidence. The commissioner's written order concluded that

> 10. The Respondent may be involuntarily treated with antipsychotic medication and side effect medication at clinically appropriate levels over his/her objections and over his/her express refusal for the period of the current involuntary treatment order, and any interim period during which he/she is awaiting trial or hearing on a new petition for involuntary treatment or involuntary medication.

CP at 74. Accordingly, the commissioner ordered:

> 11. **Antipsychotic Medication.** The petitioner and Western State Hospital are hereby authorized to administer:
>
> Antipsychotic medications as requested in the Petition; or
>
> Other: **No Olanzapine without another court order/hearing;**
>
> and side effect medications at clinically appropriate levels to the Respondent over his/her objections and over his/her express refusal.

CP at 74.

V.S. moved to revise the commissioner's order. In its January 26, 2018, order, the superior court adopted and incorporated the commissioner's written order and denied V.S.'s motion to revise.

In February 2018, Dr. Maya Kumar filed a third petition for involuntary treatment with antipsychotic medication. At the hearing, Dr. Kumar testified that V.S.'s current diagnosis was

6

changed to schizoaffective disorder but that V.S. had an extensive psychiatric history. Dr. Kumar also testified that since the last medication order was put in place, V.S. was much more cooperative and her condition had significantly improved. Prior to the medication, V.S. was refusing medical treatment for her diabetes, but the medication made a significant difference. After the medication, V.S.'s attitude improved and she became more cooperative. However, Dr. Kumar explained that V.S. was on risperidone and that Dr. Kumar would like to continue administering the same medication that V.S. has improved on. Dr. Kumar stated, however, that if V.S. is not under court order, based on what V.S. told her, V.S. will discontinue using risperidone.

Dr. Kumar further testified that if V.S. stopped taking the antipsychotic medication she would expect that V.S. would revert to the prior condition—refusing blood sugar checks and insulin treatment. Dr. Kumar also stated that she was not aware of any less intrusive treatments that would be effective for treating V.S. because it was the administration of medication that caused the degree of improvement.

On March 1, the superior court commissioner granted the petition for involuntary medication. In its oral ruling the superior court commissioner found that the necessity for the administration of antipsychotic medication had been shown by clear, cogent, and convincing evidence and that it's more likely than not that V.S. will decompensate if she does not continue to take the risperidone, causing her detention at Western State to be much longer than it ordinarily will be.

In its March 1, 2018, order, the superior court commissioner found that clear, cogent, and convincing evidence supported three compelling interests justifying the use of antipsychotic medication:

4. **Reasons for the Use of Antipsychotic Medication.** The Petitioner has a compelling interest in administering antipsychotic medication to the Respondent for the following reasons:

Respondent has recently threatened, attempted or caused serious harm to self or others and treatment with antipsychotic medication will reduce the likelihood that Respondent will commit serious harm to self or others.

Respondent has suffered or will suffer a severe deterioration in routine functioning that endangers Respondent's health or safety if he/she does not receive such treatment, as evidenced by Respondent's past behavior and mental condition while he/she was receiving such treatment.

Respondent will likely be detained for a substantially longer period of time, at increased public expense, without such treatment.

5. **Less Effective Alternatives.** Antipsychotic medication is a necessary and effective course of treatment for the Respondent, as evidence by Respondent's prognosis with and without this treatment and the lack of effective alternative courses of treatment. The alternatives are less effective than medication for the following reasons:

They are more likely to prolong the length of commitment for involuntary treatment.

CP at 199. The superior court commissioner concluded,

10. The Respondent may be involuntarily treated with antipsychotic medication and side effect medication at clinically appropriate levels over his/her objections and over his/her express refusal for the period of the current involuntary treatment order, and any interim period during which he/she is awaiting trial or hearing on a new petition for involuntary treatment or involuntary medication.

CP 200. As a result, the superior court commissioner ordered the involuntary administration of antipsychotic medications as requested in the Petition.

V.S. appeals the January 26, 2018, and March 1, 2018, orders.

No. 51911-9-II (Consolidated with No. 52375-2-II)

ANALYSIS

A.    COMPELLING STATE INTEREST

First, V.S. argues that the superior court erred in ordering involuntary medication because the State failed to prove compelling state interests justifying involuntary medication.[1]   We disagree.

Here, the superior court found that the State had proved at least three compelling state interests: (1) V.S. was threatening self-harm, (2) likelihood of substantial harm or deterioration, and (3) V.S. "will likely be detained for a substantially longer period of time, at increased public expense, without such treatment."  CP at 73, 199.  In *In re. Det. of B.M.*, 7 Wn. App. 2d 70, 80, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019), which addressed an identical finding,[2] the court held that avoiding prolonged commitment was a compelling state interest.  Because the State

---

[1]   In its briefing, the State argued that this appeal should be dismissed as moot.  However, at oral argument, the State conceded that, based on this court's decision in *B,M.*, this case is not moot. Wash. Court of Appeals oral argument, *In re Det. of V.S.*, No. 51911-9 consol. with 52375-2 (Sept. 13, 2019), at 19 min., 35 sec. to 19 min., 45 sec. (on file with court); *In re. Det. of B.M.*, 7 Wn. App. 2d 70, 77, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019).

In *B.M.*, we held that involuntary medication orders are not moot because, like involuntary commitment orders, involuntary medication orders are part of an appellant's mental health history and may have adverse collateral consequences.  7 Wn. App. 2d at 77.  Therefore, V.S.'s appeal of the involuntary medication orders is not moot, and we accept the State's concession.

[2]   In *B.M.*, the appellant challenged the superior court's finding that B.M. "'will likely be detained for a substantially longer period of time, at increased public expense, without such treatment.'" *B.M.* 7 Wash. App. at 80.

9

is only required to show one compelling state interest, this single state interest is sufficient to support the superior court's involuntary commitment order.[3]

"The Supreme Court has held that a person 'possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.'" *B.M.*, 7 Wn. App. 2d at 78 (quoting *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)). Involuntary administration of antipsychotic medication also implicates First Amendment rights. *Id*. Involuntarily committed individuals maintain their rights to refuse antipsychotic medication. RCW 71.05.217(7).

However, RCW 71.05.217(7)(a) allows the superior court to order involuntary administration of antipsychotic medication if the State proves, by clear, cogent, and convincing evidence, that administration of the antipsychotic medication serves a compelling state interest, is necessary and effective, and is required because there are no reasonable, effective alternatives. *See also B.M.*, 7 Wn. App. 2d at 79. There are four accepted compelling state interests that justify involuntary medication: "'(1) the preservation of life; (2) the protection of interests of innocent third parties; (3) the prevention of suicide; and (4) maintenance of the ethical integrity of the medical profession.'" *Id.* (internal quotation marks omitted) (quoting *In re Det. of Schuoler*, 106

---

[3] V.S. also challenges the sufficiency of the evidence to support the superior court's first and second compelling State interest findings. However, V.S. does not argue the sufficiency of the evidence with regard to the third compelling State interest—prolonged commitment. V.S. only argues that the superior court's finding that she will likely be detained for a substantially longer period of time at public expense without forced medication is not a compelling State interest. Because *B.M.* has held otherwise and is dispositive of this issue, we do not address the sufficiency of the evidence related to the court's compelling state interest findings.

Wn.2d 500, 508, 723 P.2d 1103 (1986)). However, this list is not exclusive and other interests may be as compelling as those already identified. *Id.* (citing *Schuoler*, 106 Wn.2d at 508).

In *B.M.*, the appellant argued that the State failed to prove a compelling state interest because the superior court found that the State's compelling state interest was in preventing prolonged commitment. *Id.* at 80. The court held that the State did have a compelling state interest in preventing the indefinite commitment of individuals and in providing timely and appropriate treatment. *Id.* at 82. The State's interest in preventing prolonged commitment of an individual was more than simply cost or efficiency. *Id.* at 82.

The court's holding in *B.M.* also applies here. And V.S. does not argue the sufficiency of the evidence supporting the superior court commissioner's finding that she will likely be detained for a substantially longer period of time at public expense without forced medication. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.3d 549 (1992) (This court will not consider assignments of error unsupported by argument or citation to legal authority.). Instead, V.S. only argues that preventing prolonged commitment is not a sufficiently compelling state interest to justify involuntary medication. Because *B.M.* resolves this issue, we affirm the findings of compelling state interests in both of the superior court's orders.

B.    NECESSARY AND EFFECTIVE TREATMENT

V.S. argues that the State failed to present sufficient evidence to show that involuntary administration of antipsychotic medication was necessary and effective. We disagree.

We review challenges to the sufficiency of the evidence in the light most favorable to the State. *B.M.*, 7 Wn. App. 2d at 85. The State must prove by clear, cogent, and convincing evidence that "the proposed treatment is necessary and effective" and that other alternative forms of

treatment will not likely be effective. RCW 71.05.217(7)(a). We will not "disturb the superior court's findings 'if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent, and convincing.'" *B.M.*, 7 Wn. App. 2d at 85 (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)).

1.      January 26 Order

The superior court's January 26 order adopted the commissioner's December 28 findings and conclusions. The superior court commissioner found that,

> 5.      **Less Effective Alternatives.** Antipsychotic medication is a necessary and effective course of treatment for the Respondent, as evidence by Respondent's prognosis with and without this treatment and the lack of effective alternative courses of treatment. The alternatives are less effective than medication for the following reasons:
>
> > They are more likely to prolong the length of commitment for involuntary treatment;
> >       . . . .
> > Other: If medication is administered then she is likely to make more rational decisions, particularly about her medical situations. If not administered she is likely to have serious health concerns, including death. Physical health has already deteriorated to point of starting to affect her.

CP at 74. These findings were supported by substantial evidence presented at the hearing. At the hearing, Dr. Stevens testified that antipsychotic medication would likely increase V.S.'s ability to make rational decisions regarding her health care and diabetes treatment. And Dr. Stevens explained that other courses of treatment would not be effective because V.S. would not cooperate with the only alternative—psychotherapy. Therefore, sufficient evidence supports the commissioner's finding that antipsychotic medication is a necessary and effective course of treatment for V.S., which was adopted by the superior court's January 26 order.

2.      March 1 Order

In the March 1 order, the superior court commissioner found,

5.      **Less Effective Alternatives.**  Antipsychotic medication is a necessary and effective course of treatment for the Respondent, as evidence by Respondent's prognosis with and without this treatment and the lack of effective alternative courses of treatment.  The alternatives are less effective than medication for the following reasons:

They are more likely to prolong the length of commitment for involuntary treatment.

CP at 199.

This finding was also supported by substantial evidence.  At the hearing on the March 1 order, Dr. Kumar testified that the administration of the antipsychotic medication was making V.S. more cooperative in her medical treatment for her diabetes.   However, Dr. Kumar also explained V.S. intended to stop taking the medication, which would likely result in a return to her prior condition.  And Dr. Kumar testified there was no less intrusive alternative because the medication was the cause of V.S.'s improvement.  Therefore, sufficient evidence supports the superior court commissioner's finding that the medication was necessary and effective.

C.      CORRECT LEGAL STANDARD

V.S. argues that the superior court applied the wrong legal standard when entering the January 26, 2018, order because the commissioner found that it was only likely that V.S. was refusing diabetes treatment due to delusions and psychosis.  We disagree.

V.S.'s argument relies solely on the superior court commissioner's oral ruling regarding V.S. refusing medical treatment.  However, a court's oral ruling "'is no more than an expression of its informal opinion at the time it is rendered.'"  *State v. Friedlund*, 182 Wn.2d 388, 394, 341

P.3d 280 (2015) (quoting *State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)); *see also B.M.*, 7 Wn. App. 2d at 84. The trial court's written judgment "is a final order subject to appeal." *Friedlund*, 182 Wn.2d at 395.

Here, the superior court commissioner's written order explicitly stated that its findings were made by clear, cogent, and convincing evidence. And the superior court adopted and incorporated the commissioner's written order into its order. Therefore, the final order subject to appeal applied the correct legal standard.

D.      MAXIMUM DOSAGES

Finally, V.S. argues that the superior court's order is invalid because it does not identify the maximum permitted dosages of medication allowed under the order. V.S. relies on *United States v. Hernandez-Vasquez*, 513 F.3d 908, 916-17 (9th Cir. 2008) and *United States v. Williams*, 356 F.3d 1045 (9th Cir. 2004), to support her argument. We disagree.

Although limitations on maximum dosages are required for *Sell*[4] orders authorizing involuntary medication to restore competency, those requirements do not apply to involuntary medication orders for civil commitments. *B.M.*, 7 Wn. App. 2d at 90-91. Because *Sell*, *Hernandez-Vasquez*, and *Williams* do not apply to civil commitments,[5] the failure to identify a maximum dosage is not a due process violation in the civil commitment context. *B.M.*, 7 Wn. App. 2d at 91. And an appellant subject to civil commitment may not raise the superior court's

---

[4]  *Sell v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).

[5]  *Sell* and *Hernandez-Vasquez* addressed involuntary medication orders for the purpose of restoring competence for criminal trials. *Sell*, 539 U.S. at 171; *Hernandez-Vasquez*, 513 F.3d at 911-12. *Williams* addressed involuntary medication as a condition of community supervision following a criminal conviction. 356 F.3d at 1050-51.

No. 51911-9-II (Consolidated with No. 52375-2-II)

failure to include a maximum dosage for the first time on appeal. *B.M.*, 7 Wn. App. 2d at 91; RAP 2.5(a).

Here, V.S. did not object to the superior court's failure to include a maximum dosages on either involuntary medication order. Therefore, as held in *B.M.*, V.S. may not now raise the superior court's failure to include maximum dosages in the order for the first time on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Cruser, J.

15