IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　　　Respondent,<br>　　　v.<br><br>G.M.M.,<br><br>　　　　　　　　　　Appellant. | No.  81497-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — After G.M.M. exited a store with groceries without paying, the State charged him with third degree theft.  Arraignment took place in October 2019.  A juvenile court initially set G.M.M.'s adjudicatory hearing for November 2019 and then continued the hearing a number of times.  The court held the adjudicatory hearing in March 2020.  It found G.M.M. guilty as charged.  At sentencing, G.M.M.'s attorney requested a deferred disposition.  The sentencing court denied his request because he had not requested one before the adjudicatory hearing.  G.M.M. appeals, saying that the trial court delayed the adjudicatory hearing beyond the time limit prescribed by JuCR 7.8 and that he received ineffective assistance of counsel.  We affirm.

## I. BACKGROUND

A grocery store worker saw G.M.M. walk out of the store with a basket full of groceries without paying.  The worker approached G.M.M. and asked him if he had paid.  G.M.M. responded that he had paid but was unable to produce a

receipt. When the worker suggested they check with the cashier, G.M.M. handed the worker the groceries and walked away.

An officer took a still from a video of G.M.M. leaving the store and sent it to other officers to identify him. The officer who sent the still received e-mails from three other officers informing him that the suspect was G.M.M. The State charged G.M.M. with third degree theft.

G.M.M. pleaded not guilty. After arraignment on October 7, 2019, the court set an adjudicatory hearing for November 26, 2019. On November 14, it continued the adjudicatory hearing to January 21, 2020. On January 9, it continued the hearing to February 4. On February 4, it continued the hearing to February 11.

On February 11, the State moved to continue the adjudicatory hearing to March 3 to accommodate the schedules of two officers who were unavailable to testify because of mandatory training. G.M.M. objected to the continuance, noting that it was the second week in a row that the State had sought a continuance and that G.M.M.'s parents—one of whom who would testify as a defense witness—had to take off work for each hearing date. The court, finding that the training was mandatory, granted the continuance. G.M.M. then agreed to the March 3 date.

On March 3, the State moved to continue the adjudicatory hearing because one of the testifying officers was sick, and another had a sick child. G.M.M. asked the court to "consider if there is mismanagement" because of the repeated continuances but did not object to the requested continuance. The

court decided there was no mismanagement and continued the hearing to March 10.

At the adjudicatory hearing on March 10, the court found G.M.M. guilty of third degree theft.

At sentencing, G.M.M., through counsel, requested a deferred disposition. His probation officer recommended three months of community supervision and eight hours of community service, with early release from supervision upon completion of community service. The State recommended three months of community supervision with 16 hours of community service, with early release upon completion of community service. The State also informed the court that G.M.M. was not eligible for a deferred disposition because he had not requested one before the adjudicatory hearing. Defense counsel responded that, given G.M.M.'s ineligibility for a deferred disposition, the court should consider G.M.M.'s job and efforts to finish school when deciding what sentence to impose. The court chose not to impose any community service, community supervision, or fines. In doing so, it told G.M.M. that "it's unfortunate that you're not eligible for the deferred [disposition]," and that "you don't have any criminal history, you've got a full-time job, you seem like a person who's really got his head on his shoulders now. I don't expect that you'll be committing any future crimes."

## II. ANALYSIS

### A. JuCR 7.8

G.M.M. says that, on February 11, the juvenile court erroneously continued the adjudicatory hearing to March 3. He says that the erroneous

3

continuance led to an adjudicatory hearing outside the time limits mandated by JuCR 7.8, so we should reverse his disposition and remand to the juvenile court for dismissal with prejudice. We conclude that G.M.M. failed to preserve his claim that the adjudicatory hearing was set outside the applicable time limit. And even if he did preserve the issue, he does not establish that the court erred in continuing the hearing.

The State must bring a charge to an adjudicatory hearing within 60 days of arraignment if, as here, the juvenile is not in detention. JuCR 7.8(b)(2), (c)(1). If the State does not do so, the court must dismiss the charge with prejudice. JuCR 7.8(h). But when computing the time allowed for an adjudicatory hearing, the applicable rules exclude continuance periods. JuCR 7.8(e)(3). And a court may grant a continuance when it is necessary for the administration of justice and will not prejudice the juvenile. JuCR 7.8(f)(2).

JuCR 7.8(d)(3) sets forth the process for objecting to an adjudicatory hearing set outside the time limits:

> A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set an adjudicatory hearing within those time limits. Such motion shall be promptly noted for hearing by the moving party in accordance with local procedures. *A party who fails, for any reason, to make such a motion shall lose the right to object that an adjudicatory hearing commenced on such a date is not within the time limits prescribed by this rule.*

(Emphasis added.) And "[i]f a hearing date is set outside the time allowed by this rule, but the defendant has lost their right to object to that date pursuant to subsection (d)(3), that date shall be treated as the last allowable date for the

4

adjudicatory hearing" unless a subsequent excluded period occurs, such as a continuance. JuCR 7.8(d)(4), (e)(3).

G.M.M. did not move to set the hearing date within the 60-day window as required by JuCR 7.8(d)(3). Thus, he did not preserve his right to object to the hearing date and March 3 was the last allowable date for the hearing, unless the court granted a subsequent continuance. JuCR 7.8(d)(4), (e)(3). And it did grant a subsequent continuance to March 10.

Even if G.M.M. preserved his claim that the adjudicatory hearing took place outside the applicable time limit, the court acted within its discretion in granting the continuance at issue.

We review a grant of a continuance for manifest abuse of discretion. State v. Adamski, 111 Wn.2d 574, 577, 761 P.2d 621 (1988). "A continuance . . . is an abuse of discretion only if it can be said that the decision was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Woods, 143 Wn.2d 561, 579, 23 P.3d 1046 (2001) (quoting In re Det. of Schuoler, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986)).

In granting a continuance on February 11, the court found the witness officers' training was mandatory. Cf. State v. Torres, 111 Wn. App. 323, 331, 44 P.3d 903 (2002) (holding a trial court's continuance findings were insufficient where it did not find whether officer-witness training differed from routine training or could not be rescheduled). The officers' testimony was material to the State's case; they identified G.M.M. and the identity of the offender was at issue. G.M.M. did not establish prejudice before the court. While he said the repeated

continuances caused his mother, a defense witness, to miss work, he did not say she would be unable to be present at the continued hearing—and indeed, G.M.M. ultimately agreed to the continued date of March 3 and his mother testified in his defense on March 10.  With no facts suggesting the continued date would cause G.M.M. prejudice in presentation of his defense, the juvenile court did not abuse its discretion in granting a continuance on February 11.[1]

B.  Ineffective Assistance of Counsel

G.M.M. says his counsel performed ineffectively by failing to move for a deferred disposition before the adjudicatory hearing as required by RCW 13.40.127(2).  The State responds that G.M.M.'s counsel had a conceivably legitimate tactic for waiting to move for a deferred disposition.  We agree with the State.

To successfully claim ineffective assistance of counsel, the defendant must show "(1) that counsel's conduct fell below an objective standard of reasonableness; and (2) that this deficient conduct resulted in prejudice to the defendant—that there is a reasonable probability that, but for the deficient conduct, the outcome of the proceeding would be different."  State v. Maynard, 183 Wn.2d 253, 260, 351 P.3d 159 (2015).  We presume adequate

---

[1] The State says that, in the alternative, we should decline to reverse G.M.M.'s disposition because courts have declined to consider for the first time on appeal claims under CrR 3.3, the adult court rule corresponding to JuCR 7.8.  See State v. Barton, 28 Wn. App. 690, 693, 626 P.2d 509 (1981) (holding that the right to dismissal for a violation of CrR 3.3 was waived under RAP 2.5(a)).  But since the court did not abuse its discretion in granting a continuance, we need not consider the effect of precedents related to the corresponding adult rule on JuCR 7.8.

representation, but a defendant rebuts this presumption if "no conceivable legitimate tactic exists to explain counsel's performance." Id.

As to deferred dispositions, RCW 13.40.127(2) provides that a juvenile court

> may, upon motion at least fourteen days before commencement of trial and, after consulting the juvenile's custodial parent or parents or guardian and with the consent of the juvenile, continue the case for disposition for a period not to exceed one year from the date the juvenile is found guilty. In all cases where the juvenile is eligible for a deferred disposition, there shall be a strong presumption that the deferred disposition will be granted. The court may waive the fourteen-day period anytime before the commencement of trial for good cause.

A juvenile court "may continue the case for disposition if the juvenile, among other things, (1) moves for disposition 14 days prior to trial, (2) stipulates to the admissibility of the facts in the police report, and (3) acknowledges that the court will use the report to support a finding of guilt." State v. B.J.S., 140 Wn. App. 91, 101, 169 P.3d 34 (2007) (citing RCW 13.40.127(2), (3)(a), (b)).

G.M.M. analogizes to B.J.S., where after the juvenile court found the defendant, B.J.S., guilty of the charged crimes, he moved for deferred disposition. Id. at 96. The juvenile court found that B.J.S. was ineligible because he had not moved for a deferred disposition before the adjudication hearing; his counsel told the court that they had advised B.J.S. he could seek a deferred disposition after the hearing. Id. On appeal, B.J.S. claimed ineffective assistance because his counsel had failed to advise him of the possibility of deferred disposition before the hearing. Id. at 100. The State conceded, and Division Two of this court agreed, that counsel's failure to properly advise B.J.S.

7

fell below an objective standard of reasonableness because he was eligible for a deferred disposition. Id. at 101. The court also concluded that B.J.S. had shown prejudice. Id. at 102. It reasoned that B.J.S. had tried to rehabilitate himself by pursuing his GED and a military career and that the juvenile court had recognized that a deferred disposition was "the best way to make sure that [B.J.S.] gets out of the system and never comes back," so it was likely the juvenile court would have granted a deferred disposition if properly requested. Id. at 101–02 (emphasis in original). It also reasoned that although B.J.S. denied wrongdoing in the adjudicatory hearing, it was reasonably likely that B.J.S. would have requested a deferred disposition before the hearing had he known he was eligible, since he requested one as soon as he could, based on counsel's advice. Id. at 102. Thus, the court concluded that B.J.S.'s counsel performed ineffectively. Id.

G.M.M. says that as in B.J.S., his counsel fell below an objective standard of reasonableness by waiting until sentencing to move for a deferred disposition in violation of RCW 13.40.127. And he says that the delay prejudiced him because the juvenile court likely would have granted a deferred disposition if he had properly requested it, since (1) it positively commented on his efforts to finish school and to work full-time, (2) it commented that "it was unfortunate" that he was not eligible for a deferred disposition, and (3) his probation officer also supported a deferred disposition.

But here, unlike in B.J.S., the record does not show that G.M.M.'s counsel told him that he could pursue a deferred disposition after the adjudicatory

8

hearing. And as the State says, it was conceivably legitimate for G.M.M.'s counsel to wait until sentencing to request a deferred disposition. By waiting, G.M.M. could claim that he was not the person in the grocery store security footage and hope the juvenile court agreed. He could also use the unavailability of a deferred disposition as a reason for the juvenile court to impose a sentence below that recommended by the State, which it ultimately did. Because a conceivably legitimate explanation exists for counsel's waiting to move for a deferred disposition before the adjudicatory hearing, counsel's performance did not fall below an objective standard of reasonableness. Thus, we reject G.M.M.'s ineffective assistance of counsel claim.

We affirm.

_Chun, J._

WE CONCUR:

_Andrus, A.C.J._     _Verellen, J._