# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of: E.C., | No.  54608-6-II |
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| E.C., | |
| Appellant. | |

SUTTON, J. — EC appeals from an order for involuntary administration of an antipsychotic medication, olanzapine, under RCW 71.05.217(1)(j)(i).[1] EC argues that substantial evidence does not support the findings that (1) there was a compelling interest in allowing him to be involuntarily medicated because he was likely to be detained substantially longer, at increased public expense, without such treatment, (2) treatment with olanzapine was necessary and effective, and (3) alternative treatments were less effective.  He further argues that with respect to the finding that the treatment was necessary and effective, the superior court failed to make specific findings as required under RCW 71.05.217(1)(j)(ii).  And he asks that we "clarify the level of evidence that is

---

[1] The legislature amended this statute in 2020.  Laws of 2020, ch. 302 § 31.  Because this amendment was not substantive, we cite to the current version of the statute.

required to support an order for involuntary treatment with [antipsychotic] medication." Br. of

Appellant at 1, 13. These arguments fail. Accordingly, we affirm.[2]

## FACTS

### I. PETITION FOR INVOLUNTARY TREATMENT

On July 11, 2019, the criminal court signed an order dismissing several criminal charges

against EC after finding he was incompetent to stand trial. The criminal court then committed EC

to Western State Hospital for an evaluation and possible civil commitment.

In late July, EC's treatment providers petitioned for 180 days of involuntary treatment

based on EC being gravely disabled and the fact that there was a substantial likelihood that he

would repeat his criminal acts. In the declaration supporting the petition,[3] EC's treatment

providers stated that EC had one prior admission to Western State Hospital from August 2011 to

August 2012, four additional hospitalizations in the community between 2010 and 2011, "three

outpatient crisis contacts" with a mental health facility in May 2019, and "several" emergency

room visits for "'mental health crises[es]'" in January 2019. Clerk's Papers (CP) at 7. EC's

treatment providers noted that EC was "unable to participate meaningfully in treatment due to his

severe and persistent symptomology and intense focus on delusional themes." CP at 13. In early

October, following a jury trial, the superior court granted the petition and entered an order

---

[2] Although the order at issue has expired, this issue is not moot because it could have collateral consequences in future proceedings. *In re Detention of B.M.*, 7 Wn. App. 2d 70, 76-77, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019).

[3] This declaration was signed under penalty of perjury.

detaining EC at Western State Hospital for up to 180 days pending arrangements to place him in a less restrictive alternative placement.

Just over a month later, but almost four months after the criminal court referred EC for evaluation, Dr. Xiaping Xie filed a petition for involuntary treatment with antipsychotic medication, specifically "Olanzapine or Fluphenazine/Fluphenazine Decanoate, or Risperidone/Risperadal Consta." CP at 19-20. In the petition, which Dr. Xie signed under penalty of perjury, Dr. Xie alleged that EC did "not believe he needs psychiatric medication." CP at 20. Dr. Xie further stated that EC had "recently threatened, attempted or caused serious harm to others"[4] and that treatment with antipsychotic medication would "reduce the likelihood that [EC] will cause serious harm to others." CP at 21.

Dr. Xie asserted that "[f]ailure to treat [EC] with antipsychotic medication may result in the likelihood of serious harm or substantial (further) deterioration" and that there were no "[p]ossible alternative treatments." CP at 21-22. Dr. Xie noted that EC had refused to take any psychiatric medications since his admission in July and that he had "not shown any sign of self-remitting since then." CP at 21. The doctor also asserted that EC would "likely be detained for a substantially longer period of time, at increased public expense, without such treatment." CP at 21.

---

[4] Specifically, Dr. Xie alleged that EC had "been repeatedly threatening staff by cursing them, waving fists or bobbing shoulder at them while approaching close to them" and that EC had "punched a staff member hard in the neck on [November 12, 2019] without warning." CP at 21.

## II. Hearing on Petition for Involuntary Treatment

A superior court commissioner pro tem considered the petition. Dr. Xie and EC were the only witnesses.

### A. Dr. Xie's Testimony

EC's psychiatrist, Dr. Xie, testified that he had reviewed EC's records; had spoken with EC's treatment team; and had attempted, unsuccessfully, to discuss the medication with EC. Dr. Xie stated that EC had been diagnosed with schizoaffective disorder, bipolar type. The doctor further testified that EC was psychotic, "frequently" made "grandiose [and] persecutory" "delusional statements," and exhibited "mood instability," and that EC's prognosis was "poor" if he was not treated with antipsychotic medication. Verbatim Report of Proceedings (VRP) (Dec. 2, 2019) at 15, 21.

When Petitioner's counsel asked Dr. Xie if "there [was] a likelihood of serious harm to himself or others [i]f anti-psychotic medication is not administered," Dr. Xie responded, "Yes. He is dangerous to others." VRP (Dec. 2, 2019) at 21. Dr. Xie then stated that on November 12, EC had "hit the ward secretary" in the face and the secretary had been on sick leave since then. VRP (Dec. 2, 2019) at 21-22. EC's counsel objected to this testimony based on hearsay; the commissioner admitted this testimony under ER 703.[5]

---

[5] ER 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Based on EC's history, Dr. Xie opined that the administration of antipsychotic medications would be effective. Dr. Xie stated that EC's records showed that during a prior hospitalization between 2011 and 2012, EC had received the antipsychotic medication haloperidol and that he responded to this medication. EC's counsel objected based on hearsay to Dr. Xie's testimony about EC's prior admission in 2011 and his prior treatment. The court admitted the testimony under ER 703.

Dr. Xie then testified that he was seeking to involuntarily administer olanzapine, "a second generation anti-psychotic" that EC had not taken before. VRP (Dec. 2, 2019) at 19, 30. The doctor noted that EC had been prescribed olanzapine upon his admission, but he had refused to take it. Dr. Xie further testified that with "strong encouragement," EC had previously been treated successfully with another antipsychotic drug, haloperidol.[6] VRP (Dec. 2, 2019) at 19. The testimony about the haloperidol was admitted under ER 703.

Dr. Xie described the main potential adverse side effects of antipsychotics, including olanzapine, as "[extrapyramidal (EPS)] symptoms, like shaking hands and unsteady gait;" dizziness; drowsiness; and "metabolic syndrome." VRP (Dec. 2, 2019) at 18, 26. Metabolic syndrome could include such issues as increased "[b]lood sugar levels and lipid profile," and weight gain. VRP (Dec. 2, 2019) at 26. Dr. Xie stated that the rarer side effects included fever, delirium, and death.

---

[6] Dr. Xie also recommended the use of haloperidol over the use of olanzapine if the choice was between these two drugs. But, due to notice issues, the commissioner "reserved ruling" on the Petitioner's request to amend the petition to allow for the administration of haloperidol "until [they] could have another hearing" and "proceed[ed] on the olanzapine." VRP (Dec. 2, 2019) at 35.

Dr. Xie testified that EC's existing health problems included "hypertension, hyperlipidemia, [and] COPD" and that EC was currently prescribed medication for hypertension and hyperlipidemia. VRP (Dec. 2, 2019) at 28. The doctor had investigated the potential interaction between olanzapine and EC's other medical conditions and stated that the possible interactions could be managed by "adjust[ing] the dosage to avoid or minimize the side effects" and starting EC "on very low doses" to avoid complications. VRP (Dec. 2, 2019) at 29. Dr. Xie admitted that the drug had the potential of worsening EC's existing hypertension, but he assured the court that starting with a lower dosage could avoid the risk of metabolic syndrome. In regard to the risks of administering the drug, Dr. Xie stated, "All the medication we have right now have a benefit and a risk, so we decide the medication based on the benefit ratio." VRP (Dec. 2, 2019) at 29-30. He opined that "for now [he thought] the anti-psychotic medication will benefit [EC] . . . despite the side effects," given that EC currently "pos[ed] a risk to others and consequentially also to himself." VRP (Dec. 2, 2019) at 31.

Dr. Xie further opined that EC had a "poor" prognosis if he were not medicated. VRP (Dec. 2, 2019) at 21. The doctor stated that EC "will continue to present with mood instability, agitation" and that he would "continue to be delusional" and to "frequently make delusional statements." VRP (Dec. 2, 2019) at 21. The doctor testified that if EC did not take the medication, "[i]t will prolong his stay [at Western State Hospital] significantly." VRP (Dec. 2, 2019) at 23. Dr. Xie also testified that they had "tried non-pharmacological treatment like counseling, group therapy," but it was "ineffective." VRP (Dec. 2, 2019) at 23.

B. EC'S TESTIMONY

EC testified that he did not want to take anti-psychotic medication and that he never had taken them in his life. After briefly asserting that he objected to being medicated under the "First Amendment" and "Fourth Amendment," EC then started talking about other unrelated matters. VRP (Dec. 2, 2019) at 36-37.

C. COMMISSIONER'S DECISION AND DENIAL OF MOTION FOR REVISION

The superior court commissioner entered written findings of fact and conclusions of law. In the written decision, the commissioner found that EC had refused treatment with antipsychotic medications because he "denie[d] mental illness or need for medications." CP at 26. The commissioner further found that "[t]he Petitioner has a compelling interest in administering antipsychotic medication to [EC] for the following reasons: . . . [EC] will likely be detained for a substantially longer period of time, at increased public expense, without such treatment." CP at 26.

The commissioner further found that the antipsychotic mediation was "a necessary and effective course of treatment for [EC], as evidence by [EC's] prognosis with and without this treatment and the lack of effective alternative courses of treatment." CP at 27. Additionally, the commissioner found that "[t]he alternatives are less effective than medication for the following reasons: . . . [t]hey are more likely to prolong the length of commitment for involuntary treatment." CP at 27. The commissioner concluded that EC could be involuntarily treated with olanzapine and appropriate side effect medication over his objections or refusal.

EC moved for revision of the commissioner's decision by a superior court judge. The superior court denied the motion for revision. EC appeals.

ANALYSIS

EC argues that substantial evidence does not support the findings that (1) there was a compelling interest in allowing involuntarily medication because EC was likely to be detained substantially longer, at increased public expense, without such treatment; (2) treatment with olanzapine was necessary and effective; and (3) alternative treatments were less effective. EC further argues that with respect to the finding regarding the necessity and effectiveness of the treatment, the superior court failed to make the specific findings required under RCW 71.05.217(1)(j)(ii). And he asks that we "clarify the level of evidence that is required to support an order for involuntary treatment with [antipsychotic] medication." Br. of Appellant at 1. EC's arguments fail.

I. SUFFICIENCY OF THE EVIDENCE

A. LEGAL PRINCIPLES

"We review the superior court's ruling, not the commissioner's decision." *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). Because the superior court denied EC's motion for revision, the commissioner's decision becomes the decision of the superior court. *L.K.*, 14 Wn. App. 2d at 550 (internal quotations omitted); RCW 2.24.050.

In reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the Petitioner. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459 (2019). Under the clear, cogent, and convincing evidence standard, the superior court's "'findings must be supported by substantial evidence in light of the 'highly probable' test.'" *B.M.*, 7 Wn. App. 2d at 85 (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). "That is

to say, 'the ultimate fact in issue must be shown by evidence to be highly probable.'" *L.K.*, 14 Wn. App. 2d at 550 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

An involuntarily committed person has the right to refuse antipsychotic medication. RCW 71.05.217(1)(j)(i). But the superior court can order the involuntary administration of antipsychotic medication only when

> the petitioning party proves by clear, cogent, and convincing evidence that [(1)] there exists a compelling state interest that justifies overriding the patient's lack of consent to the administration of antipsychotic medications . . . , [(2)] that the proposed treatment is necessary and effective, and [(3)] that medically acceptable alternative forms of treatment are not available, have not been successful, or are not likely to be effective.

RCW 71.05.217(1)(j)(i).

B. COMPELLING STATE INTEREST FINDING

EC first argues that the superior court erred in finding that there was a compelling state interest that justified overriding EC's right to refuse administration of antipsychotic medication based on the risk that EC would be detained at public expense for a "substantially longer period of time" if he was not involuntarily medicated. Br. of Appellant at 8. EC contends that this finding was not supported by clear, cogent, and convincing evidence because there was no admissible evidence regarding any prior treatment and the finding rests solely on Dr. Xie's "opinion testimony that E.C. would continue to be delusional without [o]lanzapine" and that this would "'prolong his stay [at Western State Hospital] significantly.'" Br. of Appellant at 10 (quoting VRP (Dec. 2, 2019) at 21, 23). We disagree.

EC does not dispute that the State has a compelling interest in preventing prolonged detention, and case law expressly states that this is a legitimate state interest. *In re Det. of Schuoler*,

106 Wn.2d 500, 509, 723 P.2d 1103 (1986); *B.M.*, 7 Wn. App. 2d at 82. Rather, EC argues that in order to establish this compelling state interest, there must be evidence that there is a risk that the patient will be confined for the remainder of his or her life and not just that administration of an antipsychotic would be more expeditious. *B.M.* does not support this argument.

In *B.M.*, the commissioner found that BM would "likely be detained for a *substantially longer* period of time, at increased public expense, without such treatment." 7 Wn. App. 2d at 80 (internal quotation marks omitted) (emphasis added). On review, we held that this finding was sufficient to establish "a compelling interest in involuntarily administering antipsychotics in order to prevent *prolonged* commitment." *B.M.*, 7 Wn. App. 2d at 82 (emphasis added). The fact we did not require a finding that BM would potentially be subject to confinement for the remainder of his life undermines EC's argument that such a finding is required here.

EC further contends that a compelling state interest exists only when there is a pattern of repeated admissions and evidence that demonstrates that without medication the patient is not likely to recover.[7] He cites to *Schuoler* and asserts that, unlike in *Schuoler*, there was no evidence of multiple admissions and evidence that other forms of treatment failed to prevent "re-admission." Br. of Appellant at 9. But even though those facts existed in *Schuoler*, EC cites no authority stating that those facts are *required* for the court to find a compelling state interest in avoiding an extended

---

[7] In his reply, EC asserts that Dr. Xie at no point testified "that anti-psychotic medication would help EC recover to the point he could be discharged" and that evidence that the use of the antipsychotic would lead to discharge is required. Reply Br. of Appellant at 2. But Dr. Xie's testimony that EC's prognosis was "poor" if he was not medicated and that his "stay" at Western State Hospital would be "prolong[ed]" if he was not medicated clearly provides evidence that antipsychotic medications would promote EC's recovery *and* release. VRP (Dec. 2, 2019) at 21, 23.

detention. "[I]f a party does not provide a citation to support an asserted proposition, courts may 'assume that counsel, after diligent search, has found [no supporting authority].'" *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017) (second alteration in original) (quoting *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978)). Accordingly, this argument fails.[8]

Taken in the light most favorable to the petitioner, Dr. Xie's testimony provides sufficient evidence to allow the court to find that it was highly likely that EC was at risk of prolonged detention without antipsychotic treatment. Thus, clear, cogent, and convincing evidence supports the compelling state interest finding.

C. NECESSARY AND EFFECTIVE FINDING

EC next asserts that the evidence was insufficient to support the finding that olanzapine was "necessary and effective." Br. of Appellant at 2. Again, we disagree.

As to the "necessary" element, EC argues that "[i]t should not be enough to show merely that antipsychotic medication is faster or more convenient."[9] Br. of Appellant at 10. He contends that there was no admissible evidence of prior treatment and that because EC had only been "committed for about [five] weeks by the time the petition for involuntary medication was filed,"

---

[8] Dr. Xie's testimony, the petition, and the declaration supporting the former petition provided evidence of EC's multiple admissions and treatment failures, but the commissioner limited that evidence under ER 703, so this evidence could only be considered as a basis of Dr. Xie's professional opinions. We note that EC does not cite any authority stating that a mental health professional's opinion based on the factors found relevant in *Schuoler* cannot establish a compelling state interest by clear, cogent, and convincing evidence. Thus, Dr. Xie's opinion testimony was sufficient to support the court's finding. *See Arredondo*, 188 Wn.2d at 262.

[9] Although EC presents this argument as part of his argument regarding the compelling state interest, it is more properly characterized as a challenge to the sufficiency of the evidence that the antipsychotic treatment was necessary.

the failure of the nonpharmacological treatments did not amount to clear, cogent, and convincing evidence that he would remain at Western State Hospital unless he received antipsychotic medication. Br. of Appellant at 10. This argument fails.

First, EC had been at Western State Hospital for nearly four months, not five weeks, when the petition for involuntary medication was filed. Thus, there had been time to determine whether any non-pharmacological treatments would be effective.

Second, although much of the evidence was limited under ER 703, that limitation did not preclude Dr. Xie from basing his opinion on that evidence, which included information regarding EC's prior admission to Western State Hospital, the failure of non-pharmacological treatments during that admission, and the failure of alternative treatments during this period of commitment over more than a four month period. And Dr. Xie's opinion testimony was sufficient to establish that it was highly probable that antipsychotic medications were necessary.

EC further asserts that "[c]onvenience and speed are not enough" to justify forced medications, that necessity[10] can only be found after "all other treatments have failed, leaving only *one* alternative that would prevent indefinite detention" and that there was no such evidence here. Br. of Appellant at 2, 10. But even presuming, but not deciding, that EC is correct that there must be evidence that all other treatments have failed before the superior court can find necessity, that is the case here. Dr. Xie testified that they had "tried non-pharmacological treatment like counseling, group therapy" and that those treatments were "ineffective." VRP (Dec. 2, 2019) at 23. And there is nothing in the record establishing that there were other treatments available.

---

[10] EC presents this argument as part of his discussion of the compelling state interest. This argument is, however, related to the necessity factor, so we address it in that context.

EC also argues that the evidence that olanzapine would be effective was insufficient because "E.C. had never taken [o]lanzapine before, so his specific reaction to it was completely unknown," and "[t]he doctor did not clearly testify that the low dose would have the desired effect, instead implying that there would be some trial and error, balancing the effectiveness against the side effects." Br. of Appellant at 12. But EC cites no authority stating that the petitioner must demonstrate that a specific medication had worked for the patient in the past or that the medication was guaranteed to benefit a particular patient. And such requirements would greatly impede the ability to effectively treat individuals who refused voluntary medication because there would be little chance those individuals had any prior experience with those drugs. In this case, Dr. Xie's conclusion that EC would benefit from olanzapine was based on Dr. Xie's knowledge of the medication and also EC's prior positive response to treatment with a different antipsychotic drug. Thus, Dr. Xie's opinion had a strong foundation and provides sufficient evidence from which the superior court could have found that it was highly likely that treatment with olanzapine would be effective.

D. LACK OF ALTERNATIVE FORMS OF TREATMENT

EC further argues that the superior court's finding itself was inadequate. EC asserts that the court found only that the alternative forms of treatment were "less effective" because they were "'more likely to prolong the length of commitment'" rather than finding that they were "not available, [would not have] been successful, or [were] not likely to be effective," as required under RCW 71.05.217(1)(j)(i). Br. of Appellant at 11-12 (quoting CP at 27). EC is correct that the portion of the finding stating that the treatment "alternatives are *less effective*" because "[t]hey are more likely to prolong the length of commitment," does not alone demonstrate that the treatment

alternatives are "not available, would not have been successful, or were not likely to be effective." CP at 27. But the finding also states that there was a "lack of effective alternative courses of treatment." CP at 27. The State has a compelling interest in ensuring that EC was not subject to substantially longer detention than necessary, and the fact that the available treatments were "more likely to prolong the length of commitment," demonstrates that the alternative treatments were not likely to be effective. CP at 27.

## II. LACK OF SPECIFIC FINDINGS

EC further argues that the superior court failed to make the specific findings regarding the necessity and effectiveness of the treatment as required under RCW 71.05.217(1)(j)(ii) because the findings were not specific to EC. Again, we disagree.

RCW 71.05.217(1)(j)(ii) provides: "The court shall make *specific findings* of fact concerning: (A) The existence of one or more compelling state interests; (B) the necessity and effectiveness of the treatment; and (C) the person's desires regarding the proposed treatment." (Emphasis added). The superior court's written findings include the following finding:

> Antipsychotic medication is a necessary and effective course of treatment for [EC], as evidence by [EC's] prognosis with and without this treatment and the lack of effective alternative courses of treatment. The alternatives are less effective than medication for the following reasons: . . . They are more likely to prolong the length of commitment for involuntary treatment.

CP at 27.

EC contends that this finding is inadequate because it is "distinctly non-specific" in regard to EC's case. Br. of Appellant at 11. He argues:

> The finding does not state what the court found to be E.C.'s prognosis with or without antipsychotic medication. The finding does not explain what makes antipsychotic medication necessary. It does not explain how the medication will

be effective. This finding fails to meet the statutory requirement of specificity concerning the necessity and effectiveness of the treatment.

Br. of Appellant at 11. But in his opening brief, EC does not cite any authority for his assertion that this level of specificity is required by RCW 71.05.217(1)(j)(ii). Because EC fails to provide any support for this argument, we need not address it further. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

EC presents argument, supported by legal citation, in his reply brief. Although we generally do not address argument presented for the first time in a reply brief,[11] we exercise our discretion in the interest of justice to consider the arguments and authorities, and hold that this argument fails.

In his reply, EC cites *LaBelle*, for the premise that the above finding is not sufficiently specific. But the finding at issue in *LaBelle* was a gravely disabled finding, which, is a much broader finding than the findings at issue here. 107 Wn.2d at 219. Also, part of the issue in *LaBelle* was that there were alternate statutory definitions of gravely disabled and the finding at issue was so broad that the reviewing court could not determine which statutory definition the trial court had relied on. 107 Wn.2d at 219. Here, the findings EC challenges are specific, and we are able to determine what evidence the court relied on to support those findings.

In his reply, EC also asserts that RCW 71.05.217(1)(j)(ii)'s plain language requires more detailed findings because the statute refers to "findings" rather than just a single finding. Reply Br. at 6-7. But EC fails to recognize that the use of the plural "findings" reflects the fact that the statute requires the court to enter "findings" as to each of the three factors, the existence of a

---

[11] *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

compelling state interest, the necessity and effectiveness of the treatment, and the patient's desires, not multiple findings for each factor.

Accordingly, EC does not show that the superior court failed to make the specific findings required under RCW 71.05.217(1)(j)(ii).

### III. "LEVEL OF EVIDENCE"

Asserting that superior court merely "rubber stamp[ed]" Dr. Xie's conclusory opinions, EC next asks that we "clarify the level of evidence that is required to support an order for involuntary treatment with [antipsychotic] medication." Br. of Appellant at 13, 1.. But EC did not object to the admission of Dr. Xie's opinions as conclusory or for lack of adequate foundation. Nor did EC object to the admission of the foundational facts under ER 703. And Dr. Xie testified about the basis of his opinions, so the court had the ability to consider whether those opinions were reasonable. The acceptance of an expert's unchallenged opinion testimony that is supported by an adequate foundation does not demonstrate that the superior court merely "rubberstamped" Dr. Xie's opinions. It was reasonable for the superior court to rely on Dr. Xie's well-supported opinions, and EC cites no authority requiring more.

### CONCLUSION

We hold that the evidence is sufficient to support the superior court's findings that (1) there was a compelling interest in allowing involuntarily medication because EC was likely to be detained substantially longer, at increased public expense, without such treatment, (2) treatment with Olanzapine was necessary and effective, and (3) alternative treatments were less effective. We further hold that EC's arguments regarding the specificity of the finding regarding the necessity and effectiveness of the treatment and his challenge to the "level of evidence" required

16

No. 54608-6-II

to support an order for involuntary treatment fail. Accordingly, we affirm the order allowing involuntary treatment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

MAXA, J.

17