# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 54643-4-II |
| P.R., | PUBLISHED OPINION |
| Petitioner. | |

MAXA, J. – PR appeals an order authorizing the involuntary treatment of him with antipsychotic medications under RCW 71.05.217(1)(j). After PR was involuntarily committed to Western State Hospital (WSH) for mental health treatment, a WSH psychiatrist petitioned for involuntary treatment with antipsychotic medications. The superior court found that there was a compelling state interest in administering the medications to prevent detention at WSH for a substantially longer period of time and to allow PR a realistic opportunity to improve his mental condition and obtain release from involuntary hospitalization.

Under RCW 71.05.217(1)(j)(i), the State must prove by clear, cogent, and convincing evidence that there is a "compelling state interest" that justifies the involuntary administration of antipsychotic medications. The State may have a compelling interest if without such involuntary treatment, the patient's detention will be for a substantially longer period of time. We hold that there was insufficient evidence based on the clear, cogent, and convincing standard to support the superior court's finding that the State had a compelling interest in preventing *substantially* prolonged detention at WSH sufficient to override PR's right to refuse consent for the medications.

Accordingly, we reverse the superior court's order authorizing the involuntary treatment of PR with antipsychotic medications.

FACTS

*Background*

At the time of the motion, PR was a 55-year-old male who was diagnosed with schizoaffective disorder and had symptoms of psychosis and mood fluctuations. In July 2019, he was involuntarily committed for up to 180 days at WSH. Dr. Nandan Kumar, a psychiatrist at WSH, began treating PR around October 2019.

In or around January 2020, Dr. Kumar or another WSH petitioner apparently filed a petition for PR to be involuntarily committed for an additional 180 days. A superior court commissioner granted the petition on January 23, 2020.

Also in January 2020, Dr. Kumar filed a petition for involuntary treatment with antipsychotic medication, specifically Zyprexa and Haldol. After a hearing, a superior court commissioner dismissed the petition for involuntary treatment with medication because the State had failed to meet its burden of proof by clear, cogent, and convincing evidence.

*Second Petition for Involuntary Treatment with Antipsychotic Medication*

On March 4, 2020, Dr. Kumar filed a second petition for involuntary treatment with antipsychotic medication. He again requested involuntary treatment with Zyprexa and Haldol. The petition referenced two specific incidents in January and March where PR (1) charged at a staff member and spit at her and (2) was placed in seclusion after throwing his food and food tray at a food server and attempting to attack another staff member.

After a number of continuances, a superior court commissioner held a telephonic hearing on the petition on April 15.[1] Dr. Kumar was the only person who testified at the hearing. PR refused to attend and the commissioner waived his presence.

Dr. Kumar testified that he had been treating PR for about six months and that PR had been diagnosed with schizoaffective disorder. Dr. Kumar stated that PR's delusions included believing that he was a U.S. Senator, that the staff was exploiting him, and that Dr. Kumar was an imposter. PR had mood fluctuations where he would become quiet and then become extremely explosive and yell at and come at staff. Dr. Kumar stated that he personally witnessed PR break a knob off a door and yell and scream at the staff.

Dr. Kumar stated that his opinions depended in part on PR's medical chart notes. He testified about five different incidents reflected in the chart notes where PR acted out in late March and early April. These incidents included refusing his lunch and throwing it at staff; screaming and yelling at a staff member; claiming that a staff member had done something in Denver; claiming that the staff member was responsible for the burning in the Amazon; throwing his dinner at staff without provocation and yelling at them; and telling a nurse to get out of his way while using expletives and swinging at the nurse. Staff successfully utilized responses such as verbal redirection and the use of an open air room, a resting place that patients presumably use to calm down, after some of these incidents.

Dr. Kumar believed that PR would continue to engage in similar behaviors as long as he remained psychotic. He stated that because PR did not know what he was doing, his behaviors

---

[1] The parties appeared telephonically due to COVID protocols. Portions of the transcript from this hearing have been marked as inaudible by the court reporter due to the inability to hear the parties over the phone.

likely would continue. In addition, Dr. Kumar believed that PR posed a likelihood of serious harm to others.

Dr. Kumar opined that the requested antipsychotic medications would be effective in PR's case. He stated that PR had been treated with Zyprexa and Haldol a few years previously before his admission to WSH, and that the medications had helped him. Dr. Kumar expected that the medications would help relieve PR's symptoms. He explained that the medications would allow PR to think more clearly and that they would relieve the intensity of PR's symptoms. Once the medications took effect, PR's delusions would be less prominent and he would not be bothered by thoughts of paranoia.

Dr. Kumar specifically was asked about PR's prognosis if the requested medications were not administered, but the trial transcript indicates that his response was inaudible. The only testimony Dr. Kumar provided regarding whether PR would be detained longer without medication was as follows:

Q. And would failure to administer these medications substantially prolong his stay at [WSH]?

A. Yes. If he's not medicated the stay would be prolonged.

3 Report of Proceedings (RP) at 31. Dr. Kumar did not state for how long PR likely would be detained if he did not take the medication.

Finally, Dr. Kumar stated that "less intrusive treatment like verbal redirection or psychotherapy is not going to be effective at this time . . . [b]ecause of the degree of psychosis and the intensity of paranoia." 3 RP at 31. However, once PR was medicated and his symptoms improved, alternative measures would be much more effective.

The commissioner dismissed the petition for involuntary treatment, concluding that the petitioner did not meet his burden of proof by clear, cogent, and convincing evidence. The

commissioner stated, "I do not find in this case that the state has established a compelling state interest. The behaviors of the respondent are difficult, but the interventions seem to work." 3 RP at 52.

*Motion for Revision*

The State filed a motion for revision with the superior court. The superior court held a hearing on the motion for revision. PR again did not appear and the court waived his appearance. In addition to oral argument, the court reviewed the pleadings and transcript from the earlier hearing. The court concluded that there was a compelling state interest in administering antipsychotic medications and revised the commissioner's order.

In its oral ruling, the superior court stated that the purpose of hospitalization was to "provide an effective treatment that will lead to an improvement that will lead to a release." RP (May 8, 2020) at 21. The court continued:

> The testimony was that he's going to remain psychotic, which is the state that Dr. Kumar described at least in the March-April time period if he's not medicated. It seems to me that the better course here would be to end the acute psychosis in an effort to get him to the point where he can be treated conventionally with psychotherapy and redirection.

RP (May 8, 2020) at 22.

The superior court entered findings of fact, conclusions of law, and an order authorizing involuntary treatment with antipsychotic medications on a preprinted, standardized form. At the beginning of the order the court stated:

> [T]his Court GRANTS the Petitioner's motion for revision and finds that the State proved by clear, cogent, and convincing evidence that there exists a compelling state interest that justifies overriding [PR's] lack of consent to the administration of antipsychotic medications, that the proposed treatment is necessary and effective, and that medically acceptable alternative forms of treatment are not available, have not been successful, or are not likely to be effective.

Clerk's Papers (CP) at 83. This language is nearly identical to the language in RCW 71.05.217(1)(j)(i).

Under "Findings of Fact," the superior court found by clear, cogent, and convincing evidence that there was a compelling state interest to administer antipsychotic medication and checked the box for the preprinted finding that stated, "[PR] will likely be detained for a substantially longer period of time, at increased public expense, without such treatment." CP at 84. The court also made a supplemental finding on a line labeled "Other":

> The State has an interest in administering treatment that will allow [PR] a realistic opportunity to improve in his mental condition and release from involuntary hospitalization. This interest extends beyond simply keeping [PR] from harming others, but allows the State to involuntarily administer medications to improve his acute symptoms of psychosis. This interest outweighs [PR's] desire not to be treated with antipsychotic medication. The Court notes that the desired medications may have potentially harmful adverse side effects.

CP at 85.

The superior court also found by clear, cogent, and convincing evidence using preprinted language that "[a]ntipsychotic medication is a necessary and effective course of treatment" for PR "as evidence[d] by [PR's] prognosis with and without this treatment and the lack of effective alternative courses of treatment." CP at 85. The court found that the alternatives were less effective than medication because "[t]hey are more likely to prolong the length of commitment for involuntary treatment." CP at 85. The court also made a supplemental finding on a line labeled "Other":

> The Court finds that the State has a compelling interest in treating [PR] with the end goal of allowing him to improve to the point that he may release to the community and live independently. While less restrictive alternatives have apparently been successful in keeping [PR] from overtly harming others, he is likely to remain psychotic and his acute psychosis will not improve without treatment with antipsychotic medications.

CP at 85.

6

The court ordered that Dr. Kumar and WSH were authorized to administer Zyprexa and Haldol at clinically appropriate levels to PR over his objections and express refusal.

PR appeals the superior court's order.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Involuntary Commitment

The Involuntary Treatment Act (ITA), chapter 71.05 RCW, governs the temporary detention for evaluation and treatment of persons with mental disorders as well as involuntary treatment with antipsychotic medication.

Former RCW 71.05.320(4) (2018) states that after the initial 180-day period of commitment, the person in charge of the facility in which a person is committed may file a new petition for involuntary treatment on various grounds. Relevant here, a person may be involuntarily recommitted for up to an additional 180 days if he or she continues to be gravely disabled. Former RCW 71.05.320(4)(d), (6). Former RCW 71.05.020(22) (2019) defines "gravely disabled" as a condition in which a person, due to a mental disorder:

> (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Either definition of "gravely disabled" provides a basis for involuntary commitment. *In re Det. of LaBelle*, 107 Wn.2d 196, 202, 728 P.2d 138 (1986).

In addition, a new petition for involuntary treatment may be filed when a person who:

> (a) During the current period of court ordered treatment: (i) Has threatened, attempted, or inflicted physical harm upon the person of another, or substantial damage upon the property of another, and (ii) as a result of a mental disorder,

7

substance use disorder, or developmental disability presents a *likelihood of serious harm.*

Former RCW 71.05.320(4)(a) (emphasis added). The term "likelihood of serious harm" means:

(a) A substantial risk that . . . (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or (iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or
(b) The person has threatened the physical safety of another and has a history of one or more violent acts.

Former RCW 71.05.020(35) (2019).

The court in *LaBelle* emphasized that people cannot be involuntarily committed "solely because they are suffering from mental illness and may benefit from treatment." 107 Wn.2d at 207.

2. Involuntary Administration of Antipsychotic Medication

A person has a liberty interest in avoiding the unwanted administration of antipsychotic medication under the due process clauses of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 78 & n.3, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019). Other constitutional provisions also may be implicated. *Id.* at 78 & n.4. However, the State can limit this right if the state interest is sufficiently compelling and the proposed treatment is both necessary and effective to further that interest. *In re Det. of Schuoler*, 106 Wn.2d 500, 508, 723 P.2d 1103 (1986).

In addition, a person who has been involuntarily committed on the grounds that he or she is gravely disabled or presents a likelihood of serious harm as a result of a behavioral health disorder has a statutory right to refuse antipsychotic medication. RCW 71.05.215(1); RCW

71.05.217(1)(j).[2]  But the right to refuse consent to antipsychotic medication can be disregarded and the medication can be administered involuntarily if certain requirements are met.

RCW 71.05.215(1) states that a person does not have the right to refuse consent if "it is determined that the failure to medicate may result in a likelihood of serious harm or substantial deterioration or substantially prolong the length of involuntary commitment and there is no less intrusive course of treatment than medication in the best interest of that person."

RCW 71.05.217(1)(j)(i) states that a court may order the administration of antipsychotic medication if:

> the petitioning party proves by clear, cogent, and convincing evidence that [1] there exists a compelling state interest that justifies overriding the patient's lack of consent to the administration of antipsychotic medications or electroconvulsant therapy, [2] that the proposed treatment is necessary and effective, and [3] that medically acceptable alternative forms of treatment are not available, have not been successful, or are not likely to be effective.

The court is required to "make specific findings of fact concerning: (A) The existence of one or more compelling state interests; (B) the necessity and effectiveness of the treatment; and (C) the person's desires regarding the proposed treatment."  RCW 71.05.217(1)(j)(ii).

The Supreme Court in *LaBelle* emphasized that people cannot be involuntarily committed "solely because they are suffering from mental illness and may benefit from treatment."  107 Wn.2d at 207.  The same rule necessarily applies to involuntary treatment with medication.  A court cannot order involuntary treatment with medication simply because such treatment would be in the person's best interest.

---

[2] RCW 71.05.215 and RCW 71.05.217 both were amended in 2020, with an effective date after the superior court's order.  The amendments to RCW 71.05.215 are not material to this case and the amendments to RCW 71.05.217 primarily changed the numbering and lettering of the paragraphs. Therefore, we cite to the current versions (as do the parties).

3. Mootness

As the State concedes, the appeal of an order of involuntary administration of antipsychotic medicine is not moot because such an order may have collateral consequences in future proceedings. *B.M*, 7 Wn. App. 2d at 76-77.

B.   COMPELLING STATE INTEREST

PR argues that the evidence was insufficient to support the superior court's finding that there was a compelling interest in preventing prolonged detention sufficient to override his right to refuse consent for antipsychotic medications. We agree.

1. Standard of Review

We review challenges to the sufficiency of the evidence in the light most favorable to the State. *B.M.*, 7 Wn. App. 2d at 85. Substantial evidence generally is the quantum of evidence sufficient to persuade a rational fact finder of the truth of the fact. *In re Det. of T.C.*, 11 Wn. App. 2d 51, 56, 450 P.3d 1230 (2019). But when the State bears the burden to prove its case by clear, cogent and convincing evidence as required under RCW 71.05.217(1)(j)(i), a heightened standard applies. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). The trial court's findings must be supported by evidence that makes the fact at issue highly probable. *Id.*

2. Legal Background

As noted above, RCW 71.05.217(1)(j)(i) requires that the superior court find "by clear, cogent, and convincing evidence that there exists a compelling state interest that justifies overriding the patient's lack of consent to the administration of antipsychotic medications." Here, the superior court found that there was a compelling state interest in administering antipsychotic medication to PR because he "will likely be detained for a substantially longer period of time, at increased public expense, without such treatment." CP at 84.

10

The Supreme Court in *Schuoler* addressed the involuntary administration of electroconvulsive therapy (ECT). 106 Wn.2d at 501. The court found that the testimony of two doctors supported a finding of a compelling state interest in treating Schuoler with ECT. *Id.* at 508-09. The first doctor testified that "because of her disabilities and repeated admissions to medical facilities Schuoler has constituted a tremendous financial burden for the state." *Id.* at 509. The second doctor testified that "without treatment Schuoler 'may end up in the back wards of [a] state hospital, a helpless creature that nobody can ever take care of.' " *Id.* (citation omitted) (alteration in original). Both doctors also testified that drug therapy was not helping, and that ECT provided an 80 percent chance of recovery. *Id.*

In *B.M.*, the superior court commissioner made a finding of compelling state interest identical to the superior court's finding in this case: that B.M. " 'will likely be detained for a substantially longer period of time, at increased public expense, without such treatment.' " 7 Wn. App. 2d at 75 (citation omitted). The court stated:

> [O]ur Supreme Court [in *Schuoler*] identified as a compelling state interest the prevention of prolonged detention at state expense that comes with "repeated admissions to medical facilities" when without treatment an individual is unlikely to recover and may end up in a state facility long-term. *Schuoler*, 106 Wn.2d at 509, 723 P.2d 1103. This is similar to the interest the commissioner identified here that B.M. "will likely be detained for a substantially longer period of time, at increased public expense, without such treatment." As a result, *Schuoler* strongly supports the conclusion that this is a compelling state interest.

*Id.* at 81 (citation omitted).

The court also relied on RCW 71.05.010, which stated the purposes of the ITA. *Id.* at 81-82. The court stated, "The purposes of the Act support the conclusion that the State has a compelling interest in preventing the indefinite commitment of an individual and an interest in providing 'timely and appropriate treatment.' " *Id.* at 82 (quoting RCW 71.05.010(1)). The court concluded that the commissioner properly concluded that there was a compelling state interest in

11

"involuntarily administering antipsychotics in order to prevent prolonged commitment." *Id.* at 82.

Regarding sufficiency of the evidence, the court noted a doctor's testimony that "if B.M. did not start taking antipsychotic medication it was not likely that he could recover to the point where he could be discharged." *Id.* at 86. The court concluded that sufficient evidence showed that "B.M. would be committed for a longer period of time if he was not involuntarily medicated." *Id.*

3.    Applicable Standard

Both *Schuoler* and *B.M.* make it clear that avoiding a patient's prolonged detention in a state hospital can be a compelling state interest that justifies involuntary treatment with antipsychotic medication. *Schuoler*, 106 Wn. 2d at 509; *B.M.* 7 Wn. App. 2d at 82. The issue unresolved by these cases is *how much longer* a patient's detention must be extended in order to support a compelling state interest.

PR argues that the State must show more than that the patient likely will be detained longer with administration of antipsychotic medication. Relying on *Schuoler*, he claims that the standard should be whether without medication the patient likely would remain involuntarily committed for the rest of his or her life or at least for some indefinite, long-term period. PR emphasizes that there is no evidence here that he would *never* be discharged if he was not given antipsychotic medications.

There was evidence in *Schuoler* that without treatment, the patient likely would be confined to a state hospital indefinitely. 106 Wn.2d at 509. But the court never stated that such evidence was necessary to support involuntary treatment with medication. And in *B.M.*, there was evidence that the patient might never be discharged if he did not take antipsychotic

12

medication. 7 Wn. App. 2d at 86. But again, the court did not expressly require such evidence. Therefore, these cases do not support requiring the State to show that the patient would be committed for the rest of his life to obtain an involuntary treatment order.

PR also argues that before the State can show a compelling interest in preventing prolonged commitment, it must establish that antipsychotic medication is the only remaining option. He claims there must be a showing that other treatments had failed and that enough time had passed to confirm that alternatives could not succeed. But he cites no authority for this proposition. And in fact, no such evidence was presented in *B.M.*, where the patient had only been involuntarily committed for 17 days at the time the court entered the involuntary treatment order. 7 Wn. App. 2d at 85.

At the other end of the spectrum, there is language in *B.M.* suggesting that a compelling state interest exists if a patient's detention will be prolonged for *any* period of time. The court stated, "[T]he State presented sufficient evidence to establish that B.M. would be committed *for a longer period of time* if he was not involuntarily medicated." *B.M.* 7 Wn. App. 2d at 86. (emphasis added). But the court did not expressly state that *any* prolonged detention would support a finding of a compelling state interest.

We conclude that the appropriate standard to determine whether there is a compelling state interest is whether the patient likely would be detained for a *substantially* longer period of time or indefinitely without involuntary treatment with medication. The court in *B.M.* evaluated and approved a superior court commissioner's finding that B.M would be detained for a substantially longer period of time. *Id.* at 81. And the court noted that one of the purposes of the ITA, expressed in RCW 71.05.010(1)(b), supported the conclusion that preventing "indefinite" commitment was a compelling state interest. *Id.* at 82. Finally, RCW 71.05.215(1) states that a

person does not have the right to refuse consent to medication if the failure to medicate may "*substantially* prolong the length of involuntary commitment." (Emphasis added.)

What period of prolonged detention qualifies as "substantial" must be determined on a case by case basis, based on all the relevant facts and circumstances. But evidence that the patient's detention merely will be prolonged for some unstated period of time is not sufficient to establish the compelling state interest requirement.

4.    Sufficiency of Evidence

Here, Dr. Kumar replied "[y]es" when asked if failure to administer antipsychotic medication would "substantially prolong" PR's detention at WSH. 3 RP at 31. But his only other comment on the issue was the statement that "[i]f he's not medicated the stay would be prolonged." 3 RP at 31.

Simply agreeing without explanation or elaboration that a patient likely would be detained for a substantially longer period of time without medication is not sufficient to establish a compelling state interest by clear, cogent, and convincing evidence. In order to satisfy the stringent standard of proof, Dr. Kumar needed to state in at least general terms how long PR's detention likely would be prolonged if he did not take antipsychotic medication. Only then would the trial court be able to evaluate whether the prolonged stay was substantial. Or he could have stated that PR likely would be detained indefinitely or that it was likely that PR would never be released from WSH without involuntary medication. This is the type of testimony that is required to support a finding of compelling state interest.

Dr. Kumar was asked about PR's prognosis if he did not take antipsychotic medication. His answer may have provided some clarification regarding how long PR's detention would be

14

prolonged. But the transcript states that Dr. Kumar's answer was inaudible, and therefore that answer is not in our record.

Dr. Kumar did provide other testimony that was relevant to whether PR would be detained for a substantially longer period of time if he did not take antipsychotic medication. Dr. Kumar explained that PR's symptoms of psychosis included multiple delusions, mood fluctuations, multiple episodes of yelling and screaming at staff, and taking a swing at a staff member. Dr. Kumar believed that PR would continue to engage in similar behaviors without antipsychotic medication.

This testimony possibly could support an inference that PR would be detained for some undetermined longer period of time without medication. But in light of the requirement in RCW 71.05.217(1)(j)(i) that the State establish a compelling state interest by clear, cogent, and convincing evidence, we conclude that this evidence is insufficient to meet that standard.

We hold that there is insufficient evidence to support the superior court's finding by clear, cogent, and convincing evidence that PR likely would be detained for a substantially longer period of time without involuntary treatment with the requested antipsychotic medications. Therefore, the superior court erred in ordering involuntary treatment.

C.    OTHER REQUIRED FINDINGS

Because we hold that the superior court erred in finding a compelling state interest, we need not address the other requirements of RCW 71.05.217(1)(j)(i). However, we emphasize that before ordering involuntary treatment with antipsychotic medication, the court must make express, specific findings based on clear, cogent, and convincing evidence that (1) the "treatment is necessary and effective," and (2) "alternative forms of treatment are not available, have not been successful, or are not likely to be effective." RCW 71.05.217(1)(j)(i).

15

CONCLUSION

We reverse the superior court's order authorizing the involuntary treatment of PR with antipsychotic medications.

MAXA, J.

We concur:

LEE, C.J.

SUTTON, J.