IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>J.W.B. | No. 83469-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — J.W.B. appeals a trial court order committing him for up to 180 days of involuntary treatment because of his grave disability. J.W.B. contends that (1) the evidence does not suffice to support a finding that he is gravely disabled under RCW 71.05.020(24)(a) or (b), and (2) the court's factual findings do not support its conclusion that J.W.B. is gravely disabled. For the reasons below, we affirm.

## I.    BACKGROUND

In 1988, Western State Hospital (WSH) admitted J.W.B. under a Competency Restraining Order after he allegedly killed his father. Two years later, J.W.B. was civilly committed. Every six months since that commitment, the State has petitioned for, and trial courts have granted, continued involuntary treatment for J.W.B.[1]

---

[1] J.W.B. appealed an order for continued treatment entered on January 14, 2020. Division Two of this court affirmed that decision on October 12, 2021. In re Det. of J.B., 54622-1-II (Wash. Ct. App. Oct. 12, 2021) (unpublished), https://www.courts. wa.gov/opinions/pdf/D2%2054622-1-II%20Unpublished%20Opinion.pdf. He also appealed an order for continued treatment entered on July 10, 2020, which Division Two affirmed on October 26, 2021. In re Det. of J.B., 54832-1-II (Wash. Ct. App. Oct. 26,

Citations and pin cites are based on the Westlaw online version of the cited material.

On December 15, 2020, WSH physicians Dr. Mohebat Sabeti and Dr. Elwyn Hulse petitioned for 180 days of involuntary treatment, alleging that, as a result of a mental disorder, J.W.B. continued to be gravely disabled.

At a hearing on the matter on January 11, 2021, Dr. Hulse testified that J.W.B. has schizophrenia, multiple episodes. Dr. Hulse said that he and WSH staff observed J.W.B.'s delusions, including his belief that WSH doctors "implanted him with transistors, and that these transistors are focused on destroying his manhood and homosexualizing [sic] him," and that "he is being held illegally."

When asked whether J.W.B., if released, would be able to meet his basic health and safety needs, Dr. Hulse said, "No, he could not." Dr. Hulse said that J.W.B.'s "mental disorder undermines his social cognition" such that he "over-reacts to every slight as if he is also being confronted by another person who is also six foot two regardless if they are, like, five foot four," and has "stated that, you know, he has killed . . . before, and he could kill again." Dr. Hulse provided the following example of J.W.B.'s poor social cognition:

> [J.W.B.] wanted to sit down in a chair, and one of [the] other patients who is much smaller and female has a psychosis where she has invisible people sitting in chairs too. And he sat down in the chair. It started a conflict. And he issued a death threat to her.

And in the petition, Dr. Hulse wrote that, in the month before, J.W.B. "grabbed her by the throat and proceeded to choke her." Dr. Hulse wrote that J.W.B.

---

2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054832-1-II%20Unpublished%20Opinion.pdf.

"continues to be prone to moments of action that are devoid of social appropriateness," including "actively harassing female staffers to 'pleasure him.'"

When asked whether J.W.B.'s deficiencies would place him at risk of serious physical harm if released, Dr. Hulse replied, "Yes," because "he is acting on his psychotic and delusional beliefs that he knows no wrong, he can do as he pleases, and that he is justified in overkill with regard to force when he receives a slight." Dr. Hulse opined that J.W.B. has no insight into his condition and has impaired judgment. Dr. Hulse said that because J.W.B. does not believe he is mentally ill, he would not seek out mental health care if released or maintain his medication.

J.W.B. testified to the following: If released, he would live at the "Y" in downtown Seattle. He would support himself by "washing dishes" and receive income from a trust fund managed by Cascade Guardianship Services Incorporated. When asked, "Is there anything else you want the Court to know," he repeatedly said that he has "never been free." He also said he was drugged at "seven months of age" and has "known terror, trauma, torture, transistors, and persecution by the mafia." J.W.B. also said, "I've been held three years after my sentence, two thousand hundred dollars missing, sexual inversions several times. They homo several times with drugs."

The trial court granted the petition. In its written order committing J.W.B., the court checked two boxes finding that he "[c]ontinues to be gravely disabled" and

3

as a result of a behavioral health disorder is in danger of serious physical harm resulting from the failure to provide for his/her essential needs of health or safety[, and]

as a result of a behavioral health disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety.

Relying on Dr. Hulse's and J.W.B.'s testimony, the court found,

If released, he would not maintain his medications. He would also not seek out any mental care if released. This is evidenced by barely tolerating staff on the ward. He does not believe he is mentally ill. There is no less restrictive setting than the hospital to meet his basi[c] health and safety needs.

And it concluded that J.W.B "is/continues to be gravely disabled."

J.W.B. appeals.

## II.   ANALYSIS

J.W.B. says that insufficient evidence supports the trial court's finding that he is gravely disabled, and its finding does not support its conclusion of law that he continues to be gravely disabled under RCW 71.05.020(24)(a) or (b). We disagree.

To commit a person who is currently committed for involuntary treatment for an additional 180 days, the petitioner must show by "clear, cogent, and convincing evidence" that the person, as a result of a mental disorder, continues to present "a likelihood of serious harm" or continues to be "gravely disabled." RCW 71.05.310; In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). RCW 71.05.020(24) defines "gravely disabled" as

a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routing functioning evidenced by repeated and escalating loss of cognitive or volitional

4

control over his or her actions and is not receiving such care as is essential for his or her health or safety.[2]

"Appellate review is limited to determining whether substantial evidence supports the findings, and if so, whether the findings in turn support the trial court's conclusions of law and judgment." LaBelle, 107 Wn.2d at 209. Substantial evidence is "the quantum of evidence sufficient to persuade a fair-minded person of the truth of the declared premise." In re Det. of H.N., 188 Wn. App. 744, 762, 355 P.3d 294 (2015). Clear, cogent, and convincing evidence "means the ultimate fact in issue must be shown by evidence to be 'highly probable.'" LaBelle, 107 Wn.2d at 209. "Generally, where findings are required, they must be sufficiently specific to permit meaningful review." Id. at 218. "While the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions." Id. "Accordingly, we will not disturb the trial court's findings of 'grave disability' if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." Id. at 209.

J.W.B. says the trial court erred by ordering continued involuntary commitment because substantial evidence does not support finding him gravely disabled under either RCW 71.05.020(24)(a) or (b). The trial court found that J.W.B. continues to be gravely disabled because: (1) J.W.B.'s "mental disorder undermines his social cognition," (2) he "has little understanding of his peers,"

---

[2] The legislature amended RCW 71.05.020 in 2021, but the amendments did not change subsection (24) and do not affect our analysis. So we cite the current version of the statute. See LAWS OF 2021, ch. 264, § 22.

(3) he "overreacts," (4) he recently threatened to kill a peer, (5) he "does not understand why he takes" medication, and (6) he "does not believe he is mentally ill."

RCW 71.05.020(24)(b) requires the State show that J.W.B.'s grave disability "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions *and* is not receiving such care as is essential for his or her health or safety." (Emphasis added.) A strict and literal reading of RCW 71.05.020(24)(b) does not necessarily reflect the statute's legislative intent. See LaBelle, 107 Wn.2d at 207. It would "result in absurd and potentially harmful consequences" by requiring a court to "release a person whose condition, as a result of the initial commitment, has stabilized or improved minimally – i.e., is no longer 'escalating' – even though that person otherwise manifests severe deterioration in routine functioning." Id. "Implicit in the definition of gravely disabled under RCW 71.05.020(1)(b) is a requirement that the individual is *unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment." Id. at 208.

In LaBelle, our Supreme Court determined that there was sufficient evidence to find Marshall, a co-appellant, gravely disabled under the former RCW 71.05.020(24)(b) (1979) because of evidence that Marshall "reacts to situations with paranoia and hostility and tends to see people as doing harm to him," and lacks "any awareness of his need for the necessary medication to stabilize his symptoms." Id. at 211, 213. The court held that there was "sufficient

evidence that treatment for his mental disorder [was] essential to Marshall's health and safety" because "medication [was] necessary to stabilize the mental deterioration" and "Marshall is unable to understand his need for treatment and, if released, would not follow through with the prescribed treatment." Id. at 213.

Here, sufficient evidence supports the trial court's finding that J.W.B. continues to be gravely disabled under RCW 71.05.020(24)(b). First, the State presented substantial evidence of J.W.B.'s severe deterioration of mental functioning under the first requirement of RCW 71.05.020(24)(b). As in LaBelle, in which Marshall reacted to situations with "hostility and tends to see people as doing harm to him," Dr. Hulse testified that J.W.B. "over-reacts to every slight." Id. at 211. Dr. Hulse testified to specific instances of J.W.B.'s loss of cognitive or volitional control, including issuing a death threat to a female peer and choking her in November 2020, one month before he filed the petition, and "actively harassing female staffers to 'pleasure him.'" Dr. Hulse also said that J.W.B. acts on "his psychotic and delusional beliefs that he knows no wrong, he can do as he pleases, and that he is justified in overkill with regard to force when he receives a slight." Thus, the State presented substantial evidence of J.W.B.'s severe deterioration of mental function, evidenced by repeated loss of cognitive and volitional control.

Also, the State presented substantial evidence under the second requirement of RCW 71.05.020(24)(b) that, if released, J.W.B. would not receive such care as is essential for his health or safety. As in LaBelle, in which Marshall was "opposed to medication or follow-up treatment and [did] not have enough

organization to be able to cooperate in a less restrictive setting," here, J.W.B. was similarly opposed to medication or follow-up treatment. He believed that he was not in a mental hospital but a prison; he failed to recognize his need for medication and "grudgingly" took it; and he "barely tolerate[d]" staff on the ward. Id. at 212. Such evidence suffices to show that, as a result of his mental disability, J.W.B. is unable to make a rational decision about his need for medical treatment and, if released, would not receive such care as is essential for his health or safety.

J.W.B. likens his case to In re Detention of G.S.[3] But there, G.S. "believed he had a mental illness," he "described a detailed 'healthy plan' for receiving treatment if released," and he said that "his medications were helping and he had not experienced symptoms during the past month." Id. at 3–4. Thus, the court held that "the State did not prove by clear, cogent, and convincing evidence that GS was gravely disabled." Id. at 1. Unlike in G.S., where G.S. had insight into his condition and had a plan to access treatment outside the facility, here, Dr. Hulse testified that J.W.B. had little insight into his condition and would not continue his medication or treatment.

We conclude that substantial evidence, which the court could have reasonably found to be clear, cogent, and convincing, supports the court's grave disability finding under RCW 71.05.020(24)(b). Thus, we do not consider the

---

[3] No. 53766-4-II (Wash. Ct. App. Mar. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053766-4-II%20Unpublished%20 Opinion.pdf; see GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

issue of substantial evidence under RCW 71.05.020(24)(a).  See In re Det. of P.R., 18 Wn. App. 2d 633, 642, 492 P.3d 236 (2021) ("Either definition of 'gravely disabled' provides a basis for involuntary commitment.").

J.W.B. also says that the trial court's factual findings do not support its legal conclusion that J.W.B. is gravely disabled.  We disagree.  The court's factual findings that J.W.B.'s "mental disorder undermines his social cognition," he "has little understanding of his peers," he "overreacts," and he recently threatened to kill a peer, support that J.W.B. experiences severe deterioration of mental functioning under the first requirement of RCW 71.05.020(24)(b).  And the court's findings that J.W.B. "does not understand why he takes" medication and "does not believe he is mentally ill" support that J.W.B. would not receive care essential to his health or safety if released under the second requirement of RCW 71.05.020(24)(b).  Thus, these factual findings support the court's conclusion that J.W.B. continues to be gravely disabled under RCW 71.05.020(24)(b) and requires continued hospitalization.

We affirm.

_____
Chun, J.

WE CONCUR:

_____        _____
Colburn, J.                    Bowman, J

9